IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| Christian Employers Alliance, ) | | |
|  ) | | |
| *Plaintiff*, ) | | |
|  ) | | |
| v. ) | Case No. 1:21-cv-195-MDT-CRH | |
|  ) | | |
| United States Equal Employment ) | | |
| Opportunity Commission, *et al.*. ) | | |
|  ) | | |
| *Defendants*. ) | | |
| _____ ) | | |

**MOTION TO AMEND INJUNCTION ORDER PURSUANT TO
RULES 59(E) AND 60(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendants hereby move the Court to amend its Order Granting Motion for Preliminary Injunction ("Injunction Order") (ECF No. 39) to clarify (1) that Defendants do not violate the Order by taking any action under either Section 1557 or Title VII as to any entities that Defendants are unaware are covered by the scope of the Order, given that Plaintiff Christian Employers Alliance ("Plaintiff" or "Alliance") has not identified its members; and (2) that the EEOC may take administrative actions required by Title VII to allow individuals who allege discrimination to meet the statute's claim processing requirements. Defendants respectfully submit that the requested relief is necessary to meet the requirements of Federal Rule of Civil Procedure 65(d) and to ensure that individuals alleging discrimination are not prejudiced from effectively pursuing any separate suit under Title VII. The amendment Defendants seek is substantively identical to a modification that Judge Welte made to the injunction order in *Religious Sisters of Mercy v. Cochran*, Case No. 3:16-cv-00386, Case No. 3:16-cv-00432, 2021 WL 1574628, at *2 (D.N.D.

Feb. 19, 2021). Counsel for Plaintiff has informed Defendants' counsel that it does not intend to oppose this motion.

## BACKGROUND

Given that the Court recently issued a detailed decision in this case, Defendants do not recount again here the full factual and procedural background. As relevant to this motion, on May 16, 2022, the Court granted Plaintiff's Motion for Preliminary Injunction (ECF No. 6), and entered a preliminary injunction applicable to Defendants EEOC and HHS, Injunction Order 17-18. Specifically, the Court preliminarily enjoined EEOC and HHS as follows:

(1) The EEOC is enjoined from interpreting or enforcing Title VII of the Civil Rights Act against the Alliance in a manner that would require its present or future members to provide insurance coverage for gender transition services.

(2) The EEOC is enjoined from applying or enforcing these same regulations against the insurers and third-party administrators of the Alliance's present and future members.

(3) HHS is enjoined from interpreting or enforcing Section 1557 of the ACA and any regulations against the Alliance's present or future members in a manner that would require them to provide, offer, perform, facilitate, or refer for gender transition services.

(4) HHS is enjoined from interpreting or enforcing Section 1557 of the ACA and implementing regulations against the Alliance's present or future members in a manner that prevents, restricts or compels the Alliance's members' speech on gender identity issues.

Injunction Order at 17-18.

## ARGUMENT

This Court has discretion under Rules 59(e) or 60(b) of the Federal Rules of Civil Procedure to amend the Injunction Order. Under Rule 59(e), a party may file "[a] motion to alter

or amend a judgment." Fed. R. Civ. P. 59(e).[1] "District courts have broad discretion in determining whether to alter or amend judgment under Rule 59(e)." *Continental Indem. Co. v. IPFS of N.Y., LLC*, 7 F.3d 713, 717 (8th Cir. 2021) (citations and quotations omitted). Likewise, under Rule 60(b), the Court may "relieve a party . . . from a[n] . . . order . . . for . . . any . . . reason that justifies relief." Fed. R. Civ. P. 60(b). "Rule 60(b) is to be given a liberal construction so as to do substantial justice." *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996). Both Rule 59(e) and Rule 60(b) are proper vehicles for the Court to reconsider an appealable order. *See Ackerland v. United States*, 633 F.3d 698, 701 (8th Cir. 2011). Defendants respectfully submit that amendment of the Court's Injunction Order is necessary in two respects.

*First*, modification is necessary because the Alliance has not disclosed the identities of its members (other than two members identified in a declaration accompanying the Alliance's reply brief), and the Alliance's counsel has informed Defendants that the Alliance does not wish to disclose its membership. Therefore, Defendants are unable to ascertain exactly what conduct the Court's injunction proscribes. Rule 65(d) requires that "[e]very order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Rule 65(d) "is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, to avoid the possible founding of contempt citations on an order that is too vague to be understood, and to ascertain that the appellate court knows precisely what it is reviewing." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987).

---

[1] The Federal Rules of Civil Procedure define "judgment" to "include[] a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). An appeal lies from any order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). Therefore, the Injunction Order constitutes a "judgment." *See Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008).

3

"The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Schmidt v. Lessard*, 414 U.S. 473, 476 n.2 (1974) (citation omitted). Thus, courts have found injunctions too vague when they failed to provide sufficient notice of the individuals or entities against whom conduct was enjoined. *See, e.g.*, *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (injunction prohibiting entity from contacting "any donor whose name is contained on Plaintiff's [trade secret donor] lists" impermissibly vague because enjoined party had "no way to determine whether a given member of the public might happen to appear on" a list not in its possession); *NLRB v. Teamsters*, 419 F.2d 1282, 1283 (6th Cir. 1970) (injunction directing employers to cease from restraining or coercing the employees of a specified company "or the employees of any other employer within its jurisdictional territory" was too vague where, inter alia, the injunction failed to define the specified jurisdiction "and thus it provides no means of defining the people for whom protection is sought").

Here, because the Alliance has not disclosed the identities of its members, Defendants lack the necessary information to determine what conduct is proscribed. Defendants therefore respectfully request that the Court modify the current injunction to make clear that Defendants are not enjoined from taking any action against an entity if the agency officials directly responsible for taking any of the prohibited actions are unaware of the relevant entity's status as an Alliance member or of the entity's relevant relationship to an Alliance member. Defendants propose that, if either agency takes any of the prohibited actions against an Alliance member or entity with a relevant relationship to an Alliance member, the entity may notify the directly responsible agency

4

official of the fact of its membership in the Alliance or relationship to an Alliance member. And once the official receives such notice from the Alliance member and verification from the Alliance, the agency shall promptly comply with the Injunction Order as to the relevant entity.

Defendants respectfully submit that this proposed amendment would continue to provide relief to the Alliance's members and those with relevant relationships to the Alliance's members, while also providing necessary protection so that Defendants may otherwise carry out their statutory obligations without risk of violating the Injunction Order.[2] And, of course, once the responsible agency official is aware of the entity's status as an Alliance member, or relevant relationship with such a member, the relevant agency will not proceed further to enforce Section 1557 and/or Title VII on the basis of the failure to perform or provide insurance coverage for gender-transition procedures.

*Second*, the EEOC requests amendment of the Court's Order to permit it to take certain administrative steps necessary to process individuals' claims of discrimination; to inform entities—including the Alliance members and entities that have relationships with them—that a claim of discrimination has been made against them; and to issue "right-to-sue" notices to protect the rights of claimants to bring suit on their own under Title VII if they so choose.

The need for this modification arises out of Title VII's unique statutory structure. Under Title VII, an individual who seeks redress for employment discrimination may not independently file suit in the first instance. Rather, the individual must start by filing an administrative charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5; 29 C.F.R. § 1601.7. Such charges must

---

[2] Another way to clarify the scope of the injunction would be for the Alliance to disclose to the Defendants the full list of their members and their members' insurers and third-party administrators. However, the Alliance's counsel has informed Defendants that the Alliance does not wish to do so. This proposed modification is intended to provide Defendants with necessary clarity without requiring the Alliance to disclose its membership.

be filed within a strict time frame (within either 180 or 300 days of the alleged unlawful employment practice) in order for an individual to maintain a claim. *See* 42 U.S.C. § 2000e-5(e)(1).[3] Once a charge is filed, the EEOC "shall serve a notice of the charge" upon the respondent "within ten days." 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.14(a). The EEOC must then investigate the charge and determine whether there is reasonable cause to believe that the charge is true. 42 U.S.C. § 2000e-5(b) (EEOC "shall make an investigation" and "shall" dismiss the charge and "promptly notify" the parties upon finding no reasonable cause, or if it finds cause, "shall" attempt to resolve the charge with the respondent); 29 C.F.R. § 1601.15.

If the EEOC dismisses a charge, the charging party may file a lawsuit against the employer named in the charge within 90 days of receipt of the Dismissal and Notice of Rights, which is often called a right-to-sue notice. *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. §§ 1601.18(b) & 1601.19(a). Further, if the EEOC has not filed suit or entered into a conciliation agreement within 180 days after the charge is filed, the charging party may request a right-to-sue notice and file suit against the employer named in the charge within 90 days of receipt of the right-to-sue notice. *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28(a)(1); *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 365 (1977) (holding that section 2000e-5(f)(1) is intended to enable an aggrieved person

---

[3] Individuals interested in filing a charge of discrimination are encouraged to initiate the process themselves by submitting an "online inquiry" through EEOC's Public Portal and then scheduling an interview. *See* https://www.eeoc.gov/filing-charge-discrimination. Whether they have gone through this process, contacted the agency's Information Intake Group, or contacted an EEOC office directly, an individual's first contact with an EEOC employee will be with intake staff. EEOC's general practice is to prepare a formal charge of discrimination, called a "Form 5 Charge of Discrimination," after an intake officer clarifies the charging party's allegations. However, other documents may also qualify as a charge of discrimination, including letters and questionnaires sent to the EEOC by charging parties that satisfy the requirements of a charge. The EEOC may also receive charges from Fair Employment Practice Agencies, with whom EEOC has worksharing agreements, as well as other federal agencies. And the EEOC sometimes receives from charging parties or their attorneys completed "Form 5" charges of discrimination.

unwilling to await the conclusion of extended EEOC proceedings to institute a private lawsuit 180 days after a charge has been filed). Finally, if fewer than 180 days have passed since the filing of the charge and the charging party requests a right-to-sue notice, the EEOC may issue the notice provided that a designated EEOC official determines "that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect." 29 C.F.R. § 1601.28(a)(2).

The EEOC requests an amendment that would clarify that the Injunction Order does not prohibit the EEOC from accepting a charge on behalf of an individual alleging discrimination, from serving notice of the charge upon an Alliance member, and from issuing a right-to-sue notice to individuals who allege discrimination. If the Injunction Order were to prohibit that conduct, it would interfere with individual claimants' ability to meet the preconditions in Title VII to bring suit for discrimination. *See* 42 U.S.C. § 2000e-5(e)(1), (f)(1); *see also Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1851–52 (2019) (explaining that, while not jurisdictional, Title VII's claim-processing rules are mandatory and that the failure to comply is a "potentially dispositive defense").

It does not appear that the Court intended its injunction to create obstacles for private individuals to bring suit based on an alleged violation of Title VII. *See* Injunction Order 14 ("The current interpretation *by the EEOC* and HHS will cause harm to health care providers.") (emphasis added). Indeed, Plaintiffs brought suit only against federal government agencies, not private individuals, and those individuals' interests should not be prejudiced by the Court's Order. *Cf. Thompson v. Freeman*, 648 F.2d 1144, 1147 (8th Cir. 1981) ("[A] non-party may be enjoined under Rule 65(d) only when its interests closely identify with those of the defendant, when the nonparty and defendant stand in privity, or when the defendant represents or controls the

7

nonparty." (quotations omitted)). However, unless the EEOC is able to accept charges and administratively process charges of discrimination, individual claimants may be unable to satisfy Title VII's claim processing requirements.

Accordingly, Defendants respectfully ask that the Court amend its Order to specify that, notwithstanding the Court's preliminary injunction, EEOC may (1) take any action in connection with the acceptance of a charge for filing regardless of the source, including receiving an online inquiry via the agency's Public Portal or requesting or receiving a questionnaire or other correspondence from the charging party, when the charge concerns an allegation against an Alliance member concerning the exclusion of gender-transition procedures from its insurance coverage; (2) accept a charge alleging that an Alliance member does not provide insurance coverage for gender-transition procedures, and enter the charge into EEOC's computer systems; (3) serve notice of the charge upon an Alliance member within ten days as required by 42 U.S.C. § 2000e-5(b); and (4) issue a right-to-sue notice to a charging party who has filed a charge against an Alliance member concerning the exclusion of gender-transition procedures from its insurance plan in accordance with the requirements and procedures set forth in 42 U.S.C. § 2000e-5(b) & (f)(1) and 29 C.F.R. § 1601.28(a)(1) & (2).

The amendment sought by Defendants is substantively identical to a modification that Judge Welte entered in *Religious Sisters of Mercy*. That case involved a plaintiff, Catholic Benefits Association (CBA), which (like the Alliance) was a nonprofit membership corporation that was organized to protect the interests of religious employers in operating their businesses in accordance with their religious beliefs. *See Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1133 (D.N.D. 2021). Judge Welte initially entered an injunction that enjoined EEOC and HHS from interpreting or enforcing Title VII and Section 1557 against CBA members or their insurers or

third-party administrators in a way that would require them to cover or perform gender-transition procedures. *Id.* at 1154. EEOC and HHS moved to modify the injunction, and plaintiffs agreed to include the agencies' proposed language in their proposed final judgment. Judge Welte then entered final judgment, adding to the injunction the requested language providing that the agencies do not violate the injunction by taking action against an entity not known to be or have a relationship with a relevant CBA member, and that EEOC can perform administrative tasks related to accepting and processing claims. *See Religious Sisters of Mercy v. Cochran*, 2021 WL 1574628, at \*2.

Defendants request that this Court add language to the Injunction Order that is substantively identical to the language that Judge Welte added in *Religious Sisters of Mercy*, except that the proposed language here refers to the Alliance rather than CBA. The fact that Judge Welte added such language suggests that the modification Defendants seek is appropriate. Indeed, Plaintiff stated in its briefing that it "is asking for the same religious protections that this Court already granted to similar plaintiffs in [*Religious Sisters of Mercy*]," and argued that "this Court could resolve this motion . . . by entering an order extending the same scope of injunctive relief to CEA and its members" as Judge Welte extended in *Religious Sisters of Mercy*. Reply Br. 1 (ECF No. 31). Further, Plaintiff's counsel has indicated that it does not intend to oppose this motion.

As set forth in the accompanying Proposed Order, Defendants propose that the Court add the following language to the Injunction Order:

> Neither HHS nor the EEOC violates this order by taking any of the above-described actions against any Alliance member, anyone acting in concert or participation with an Alliance member, or an Alliance member's health plans and any insurers or third-party administrators in connection with such health plans[4] if

---

[4] With respect to insurers and third-party administrators, Defendants' proposed amendment would make clear, as Judge Welte did in *Religious Sisters of Mercy*, that the injunction applies only to "an Alliance member's health plans and any insurers or third-party administrators *in connection*

the agency officials directly responsible for taking these actions are unaware of that entity's status as an Alliance member or relevant relationship to an Alliance member.

However, if either agency, unaware of an entity's status as an Alliance member or relevant relationship to an Alliance member, takes any of the above-described actions, the Alliance member and the Alliance may promptly notify a directly responsible agency official of the fact of the member's membership in the Alliance or the entity's relevant relationship to an Alliance member and its protection under this order. Once such an official receives such notice from the Alliance member and verification of the same by the Alliance, the agency shall promptly comply with this order with respect to such member or related entity.

Nothing in this order shall prevent the EEOC from:

> (1) taking any action in connection with the acceptance of a charge for filing regardless of the source, including receiving an online inquiry via the agency's Public Portal or requesting or receiving a questionnaire or other correspondence from the charging party, when the charge concerns an allegation against an Alliance member concerning the exclusion of gender-transition procedures from its insurance coverage;

> (2) accepting a charge alleging that an Alliance member does not provide insurance coverage for gender-transition procedures, and from entering the charge into the EEOC's computer systems;

> (3) serving a notice of the charge upon an Alliance member within ten days as required by 42 U.S.C. § 2000e-5(b); or

> (4) issuing a right-to-sue notice to a charging party who has filed a charge against an Alliance member concerning the exclusion of gender-transition procedures from its insurance plan in accordance with the requirements and procedures set forth in 42 U.S.C. § 2000e-5(b) & (f)(1) and 29 C.F.R. § 1601.28(a)(1) & (2).

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask that the Court amend its May 16, 2022 Injunction Order as proposed in the accompanying Proposed Order.

---

*with such health plans.*" The emphasized language clarifies that the injunction does not cover insurers or third-party administrators generally, even with respect to health plans that are not for Alliance members.

Dated:  June 6, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Jeremy S.B. Newman*
Jeremy S.B. Newman
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 532-3114
Email: jeremy.s.newman@usdoj.gov
*Counsel for Defendants*