IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

|  |  |
|---|---|
| Christian Employers Alliance,<br><br>*Plaintiff*,<br><br>v.<br><br>United States Equal Employment Opportunity Commission, *et al.*,<br><br>*Defendants*. | Case No. 1:21-cv-195-DMT-CRH |

**MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING SECTION 1557 RULEMAKING**

Defendants respectfully request that the Court stay proceedings in this matter pending the finalization of rulemaking proceedings that will likely have a significant impact on this case. Plaintiff's claims against Defendants United States Department of Health and Human Services ("HHS") and Office for Civil Rights of the United States Department of Health and Human Services ("OCR") hinge on their assertion that HHS's and OCR's past regulations implementing Section 1557 of the Affordable Care Act impose requirements relating to gender identity that Plaintiff contends are unlawful. But HHS and OCR are in the process of finalizing a new rule implementing Section 1557, which will supersede the earlier rules that form the basis of Plaintiff's claims and could render those claims moot. HHS aspires to issue a final rule no later than this forthcoming winter. The Notice of Proposed Rulemaking issued last year indicates that HHS and OCR are considering proposals that may have a significant impact on Plaintiff's claims. Accordingly, it would conserve judicial resources and simplify the matters in this case if the Court stays proceedings pending the finalization of the Section 1557 rulemaking. Moreover, because

Plaintiff and its members continue to benefit from the preliminary injunction entered by this Court, Plaintiff and its members would not be prejudiced by a stay.

## BACKGROUND

On October 18, 2021, Plaintiff filed its initial Complaint in this action, challenging the lawfulness of various alleged actions and legal interpretations of the U.S. Equal Employment Opportunity Commission ("EEOC") and the U.S. Department of Health and Human Services ("HHS"). ECF No. 1. On October 21, 2021, Plaintiff filed its Motion for Preliminary Injunction, ECF No. 6, which the Court granted on May 16, 2022, ECF No. 39, and which the Court amended on July 28, 2022, ECF No. 44. That preliminary injunction remains in force. On October 16, 2023, Plaintiff filed an Amended Complaint. ECF No. 68. On October 26, 2023, Plaintiff filed a Motion for Partial Summary Judgment, seeking summary judgment on Plaintiff's claims under the Religious Freedom Restoration Act (RFRA). ECF No. 69. Defendants filed an Answer on October 30, 2023. ECF No. 71.

Plaintiff's Amended Complaint is based on contentions that: (1) HHS and OCR are imposing a requirement on all healthcare providers, even religious healthcare providers, derived from HHS's interpretation of Section 1557 of the Affordable Care Act, to perform gender transition services, Am. Compl. ¶ 2, and (2) EEOC interprets Title VII to require all employers, even religious organizations, to provide insurance coverage for gender transition services, *id.* ¶ 1. Plaintiff alleges that its members have religious objections to performing or providing insurance coverage for gender transition services, *see id.* ¶¶ 7, 9, and Plaintiff claims that these purported requirements violate the Religious Freedom Restoration Act, the First Amendment, and the Administrative Procedure Act, *see id.* ¶¶ 172-296.

Plaintiff contends that HHS's supposed requirement to perform gender transition services derives from the combined effect of: (1) a regulation HHS and OCR promulgated in 2016 implementing Section 1557 (the "2016 Rule"), (2) a regulation HHS and OCR promulgated in 2020 implementing Section 1557 (the "2020 Rule"), which superseded the 2016 Rule but which was partially enjoined by certain courts, and (3) a Notification of Interpretation and Enforcement HHS issued in 2021 (the "Notification"). *See id.* ¶¶ 123-139, 229, 245, 263. The Amended Complaint specifically requests that the Court hold unlawful, set aside, vacate, and enjoin enforcement of the 2016 Rule, 2020 Rule, and Notification. *Id.*, Prayer For Relief, § F.

On August 4, 2022, HHS and OCR promulgated a Notice of Proposed Rulemaking proposing a rule to implement Section 1557, which would supersede the 2020 Rule and any aspects of the 2016 Rule deemed to remain in effect. *See* HHS, Notice of Proposed Rulemaking, Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47,824 (Aug. 4, 2022) ("2022 NPRM"). That rulemaking is ongoing. It is difficult for HHS to predict with accuracy the time period for finalizing the rule given the multiple levels of intra and inter-agency review required, as well as the potential for unforeseen circumstances to interfere with the agency's plans. Nonetheless, HHS aspires to submit the rule to the Office of Information and Regulatory Affairs for final clearance before the end of this calendar year and to issue a final rule no later than this forthcoming winter.[1]

## ARGUMENT

"A district court has broad discretion to stay proceedings when appropriate to control its docket, conserve judicial resources, and ensure the matter is handled with economy of time and

---

[1] HHS has provided this same estimate regarding the rulemaking's timing in other litigation. *See, e.g.*, *Walker v. Becerra*, Case No. 1:20-cv-02834, ECF No. 48 (E.D.N.Y. Sept. 22, 2023).

effort for itself, counsel, and litigants." *Johnson v. N. Dakota Guar. & Title Co.*, No. 1:17-cv-120, 2018 WL 6706672, at *2 (D.N.D. Dec. 20, 2018) (quoting *Ass'n of Equip. Mfrs. v. Burgum*, No. 1:17-cv-151, 2018 WL 1773 145, at *1 (D.N.D. March 5, 2018)). "Factors for the court's consideration include but are not limited to the conservation of judicial resources, whether the stay would unduly prejudice or give a clear tactical advantage to one party, and whether a stay will simplify the issues in question and the trial of the case." *Id.* A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706-07 (1997).

Applying this standard, the Court should stay proceedings in this case pending the finalization of the Section 1557 rulemaking. A stay would "conserve judicial resources." *Johnson*, 2018 WL 6706672, at *2. Plaintiff challenges purported legal requirements that Plaintiff contends derive from HHS's prior regulations implementing Section 1557, but when HHS finalizes its new Section 1557 rule, that rule will supersede those prior regulations and could render moot the challenged requirements. Even if the Court proceeds expeditiously to resolve Plaintiff's recently filed Motion for Partial Summary Judgment on Plaintiff's RFRA claims, the Court would be considering that motion at around the same time that HHS anticipates finalizing the rule.[2] If HHS finalizes the rule while the Court is in the midst of considering the merits, then at a minimum it will be necessary to engage in fresh briefing concerning the impact of the new rule on Plaintiff's claims.

---

[2] To the extent it becomes necessary for the Court to reach the merits of Plaintiff's remaining claims, it is unlikely that the Court would do so before HHS finalizes the rule.

Furthermore, although the content of the new rule will not be certain until it is finalized, there is reason to believe that the new rule may have a significant impact on this case. A central premise of Plaintiff's claims against HHS is their allegation that HHS does not recognize any exemptions to the requirements it purportedly imposes under RFRA or other religious conscience laws. Am. Compl. ¶¶ 157-58. Plaintiff contends that with the supposed lack of religious exemptions, the requirements purportedly imposed by HHS violate the rights of Plaintiff's members under RFRA and the First Amendment. *Id.* ¶¶ 205-45. Yet in the 2022 NPRM, HHS and OCR proposed instituting a procedure in which a covered entity could assert claims that it is entitled to an exemption from the rule due to the application of federal conscience or religious freedom laws, and OCR would hold any investigation or enforcement activity regarding the covered entity in abeyance until it made a determination on the entity's entitlement to a religious exemption. 87 Fed. Reg. at 47,918-19 (proposed 45 C.F.R. § 92.302). HHS and OCR explained this proposed provision as follows:

> OCR maintains an important civil rights interest in the proper application of Federal conscience and religious freedom protections. In enforcing Section 1557, OCR is thus committed to complying with RFRA and all other legal requirements. The Department believes that the proposed approach in this section will assist the Department in fulfilling that commitment by providing the opportunity for recipients to raise concerns with the Department, such that the Department can determine whether an exemption or modification of the application of certain provisions is appropriate under the corresponding Federal conscience or religious freedom law. As noted above, the Department also maintains a strong interest in taking a case-by-case approach to such determinations, which will allow it to account for any harm an exemption could have on third parties and, in the context of RFRA, to consider whether the application of any substantial burden on a person's exercise of religion is in furtherance of a compelling interest and is the least restrictive means of advancing that compelling interest.

*Id.* at 47,886. Accordingly, the finalization of the Section 1557 rule may have significant impact on Plaintiff's claims that Defendants have violated the religious freedom rights of Plaintiff's members by imposing purported requirements without any exemptions available under RFRA or other religious conscience laws.

5

It would further conserve judicial resources to stay the entire case, including the claims against EEOC.  Staying only the claims against HHS while allowing the claims against EEOC to proceed would needlessly complicate matters and would likely lead to multiple rounds of staggered summary judgment briefing.[3]

A stay would not "unduly prejudice or give a clear tactical advantage to one party." *Johnson*, 2018 WL 6706672, at *2.  Neither party would obtain a tactical advantage because the Court could continue to resolve Plaintiff's claims following the expiration of any stay.  Nor would a stay prejudice Plaintiff because the preliminary injunction would remain in place, and Plaintiff may seek relief during the stay should any compliance issues arise.  *See*, *e.g.*, *Washington v. Trump*, 2017 WL 1050354, at *5 (W.D. Wash. Mar. 17, 2017) (finding that any prejudice to plaintiffs from stay would be "minimal" in light of the preliminary injunctive relief already in effect); *Hawaii v. Trump*, 233 F. Supp. 3d 850, 855 (D. Haw. 2017) (same); *Boardman v. Pac. Seafood Grp.*, 2015 WL 13744253, at *2 (D. Or. Aug. 6, 2015) (granting stay of proceedings while defendants pursued appeal of preliminary injunction, and finding stay would not harm plaintiffs because of the injunction in place).

Finally, a stay will "simplify the issues in question."  *Johnson*, 2018 WL 6706672, at *2.  Plaintiff's claims against HHS rest on a challenge to purported requirements that Plaintiff contends derive from several regulatory pronouncements, as altered by a series of injunctions and court decisions issued by several jurisdictions.  *See* Am. Compl. ¶¶ 123-142.  Plaintiff contends that divining HHS's current regulatory requirements requires engaging in a "Humpty-Dumpty scheme"

---

[3] Furthermore, Plaintiff contends that HHS's Section 1557 regulations are relevant to its claims against EEOC.  *See* Am. Compl. ¶ 101 (alleging that the 2016 Rule reflects an agreement between EEOC and HHS to "cooperate[] . . . to ensure employer healthcare plans cover gender transition procedures").

of "put[ting] back together again" various regulatory pronouncements. Am. Compl. ¶ 139 (quoting *Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361, 371 (N.D. Tex. Aug. 9, 2021)). Plaintiff professes not to know from which regulatory pronouncement or pronouncements the purported requirements under challenge derive. *Id.* ¶ 229 ("CEA requests this relief whether the current HHS Gender Identity Mandate arises from the 2016 Rule or the 2021 Notice of Enforcement, or both, from any still-in-effect sections of the 2020 Rule or applicable court orders, or from any HHS regulations imposing the same mandate."); *accord id.* ¶¶ 245, 263. Defendants have disputed, and continue to dispute, Plaintiff's contentions about the regulatory requirements that are currently in effect. *See, e.g.*, Defendants Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 18, at 24-27. Therefore, adjudicating the merits of Plaintiff's claims requires resolving Plaintiff's admitted uncertainty and Defendants' dispute about what regulatory requirements are in effect. Once the new Section 1557 rule is finalized, that will significantly simplify matters because the new rule will set forth the regulatory requirements in effect.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay further proceedings pending the finalization of HHS's Section 1557 rulemaking, except as to any issue that may arise from any alleged noncompliance with the preliminary injunction.

Dated: October 31, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Jeremy S.B. Newman*
Jeremy S.B. Newman
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 532-3114
Email: jeremy.s.newman@usdoj.gov
*Counsel for Defendants*