IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| **Christian Employers Alliance**, on behalf of itself and its members,<br><br>*Plaintiff*,<br><br>v.<br><br>**United States Equal Employment Opportunity Commission**, et al.,<br><br>*Defendants*. | 1:21-cv-00195-DMT-CRH |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO STAY AND EXTEND TIME**

Defendants filed three motions on October 31: a motion to stay proceedings (ECF 72), a motion for extension of time (ECF 73), and a motion to expedite (also ECF 73, which the Court granted). This filing responds to both pending motions.

**I.     Defendants face no harm from filing their opposition brief.**

Defendants' flurry of filings was not caused by an imminent threat of harm to members the public, nor by any immediate need for the agencies to be relieved from the preliminary injunction. Instead, the urgency Defendants seek to relieve by these motions is their deadline, under Local Civil Rule 7.1, to file a 40-page brief opposing Plaintiff Christian Employers Alliance's summary judgment motion (ECF 69).

In the pre-motion consultation process, counsel for CEA offered to consent to 14-day extension of time for Defendants to file their brief, which would have given them 35 days. But Defendants are not simply asking for more time, such as two weeks. Defendants seek to avoid filing their brief indefinitely, and perhaps never.

Defendants face no burden to justify this motion. Not only is a briefing deadline the most ordinary of tasks for counsel, but much of the groundwork has been laid. Defendants have briefed these exact RFRA claims previously in this Court, several times in the *Religious Sisters* case, and once before the Eighth Circuit. *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583 (8th Cir. 2022). HHS has also briefed parallel claims in the Texas and Fifth Circuit courts in *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022). This Court and the Eighth Circuit have also resolved the merits of these RFRA claims, giving further parameters to inform Defendants' arguments. CEA's partial motion for summary judgment narrows the issues in this case by only focusing on RFRA, and it turns on questions of law. Defendants' task of preparing their opposition brief should therefore be straightforward. Indeed, Defendants' pending motions totaled twelve pages. Had they spent that effort drafting their opposition brief, they would have to prepare at most twenty-eight more pages.

Defendants' sudden need to avoid litigating this case coincides with the fact that they have repeatedly lost these RFRA arguments. *Religious Sisters* is now controlling, and it entitles CEA to summary judgment. ECF 69-1 at 1–2, 15–23.

Defendants seek a delay not to develop grounds on which to win this lawsuit, but because they have no merits arguments on which to avoid a final adverse judgment. If Defendants had arguments why *Religious Sisters* and *Franciscan Alliance* do not control the resolution of CEA's RFRA claims, Defendants could have pressed their appeal of this Court's preliminary injunction ruling and made these arguments to the Eighth Circuit. But Defendants did not. Likewise, if Defendants had arguments why the *Religious Sisters* holding was wrong, they could have sought Supreme Court review of that decision or the similar decision in *Franciscan Alliance*. But they did not.

Defendants are doing everything in their power to avoid another loss—except for filing a brief showing that they should win. This is not a good reason to halt this lawsuit. The case is already over two years old, and the Eighth Circuit has now resolved the central issues. Before moving for partial summary judgment, CEA asked Defendants for the injunction they request now—the same injunction Defendants agreed to in *Religious Sisters of Mercy v. Cochran*, No. 3:16-cv-00386, 2021 WL 1574628 at *1 (D.N.D. Feb. 19, 2021). CEA received no consent. Summary judgment is their next step.

## II. HHS's Section 1557 rulemaking does not justify an indefinite delay.

Defendants' purported reason to impose an indefinite stay on this case relates to HHS's proposed regulation implementing Section 1557 that has been pending for more than a year.[1] Defendants' requested stay would bind this case to an uncertain timeline, one in which HHS merely "aspires" to finalize a proposed rule in the "forthcoming winter" (whether HHS means D.C.'s winter, or North Dakota's winter, is unclear). Defendants' Memorandum in Support of Motion to Stay Proceedings Pending Section 1557 Rulemaking, ECF 72-1 at 1. EEOC, however, has no rule pending. Its only reason for wanting a stay is to have what HHS is having. EEOC points to no change in its gender identity mandate that HHS's rule would cause.

For the Court to assess this rationale for delay, two points are worth considering. First, HHS need not finalize this rule at all, and any likely timeline is many months long. Second, this particular proposed rule does not repeal HHS's gender identity mandate or grant religious exemptions. It imposes the mandate again and refuses to grant religious exemptions. The proposed rule represents more of the same injury CEA challenges now.

---

[1] HHS, Notice of Proposed Rulemaking, Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47,824 (Aug. 4, 2022) ("proposed rule").

3

### A. HHS seeks to indefinitely avoid an adverse judgment.

HHS admits it does not know how long the Court should stay this case by tying it to the promulgation of a final rule. "It is difficult for HHS to predict with accuracy the time period for finalizing the rule given the multiple levels of intra and inter-agency review required, as well as the potential for unforeseen circumstances to interfere with the agency's plans." *Id.* at 3. In other words, HHS is not promising to finalize this rule by any particular date, and admits that it will not be finalized until months into 2024 at the soonest. HHS says it might send the rule to the White House's Office of Information and Regulatory Affairs (OIRA) by the end of December—but OIRA's standard review period is 90 days, and "may be extended indefinitely."[2] So that pushes the rule to April. And even after the final rule is published, it will not go into effect for two additional months. Proposed Rule at 47,837 (discussing § 92.1(b)). That pushes the rule to June. If things go as planned.

This administration has a history of missing deadlines as it promulgates its massive gender identity mandates. In July 2022, one month before HHS's proposed Section 1559 rule, the U.S. Department of Education proposed a gender identity mandate under Title IX. Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 87 Fed. Reg. 41,390 (July 12, 2022). It is still pending. In May 2023, the Department publicly declared that it aspired to publish the final Title IX rule in October 2023. U.S. Dep't of Educ., *A Timing Update on Title IX Rulemaking* (May 26, 2023), https://blog.ed.gov/2023/05/a-timing-update-on-title-ix-rulemaking/.

It is now November, and the administration has still not sent its Title IX rule to OIRA. That process is a better barometer for this rule's timeline than HHS's mere aspirations. Mid-2024 is the soonest this rule is likely to be finalized.

---

[2] OIRA, Regulations and the Rulemaking Process, https://www.reginfo.gov/public/jsp/Utilities/faq.myjsp.

In short, the finalization of HHS's proposed rule is ultimately a political decision, made by the President (who controls OIRA) and Defendant Secretary Becerra (who governs HHS). It is subject to no deadlines. Defendants can only suggest their aspiration to finalize the rule this "winter." When the Eighth Circuit issued *Religious Sisters* in December 2022, this same proposed rule was pending, yet the Court of Appeals did not stay its proceedings. If it had, we would still be waiting. This Court should follow the Eighth Circuit and not issue a stay.

### B. HHS's proposed rule reimposes the same gender identity mandate with the same lack of RFRA exemptions.

Even if the proposed rule were finalized tomorrow, it would not change the Court's analysis of CEA's RFRA claims. HHS's motion to stay avoids describing what its proposed rule would actually do. This is because the rule would not repeal the gender identity mandate, and would not issue religious exemptions. The Court should not read HHS's ambiguous language to conclude otherwise. *See, e.g.*, ECF 72-1 at 1 (the rule "will supersede the earlier rules"). The public record shows that the proposed rule would newly impose the same gender identity mandate, and would once again use a case-by-case assessment of RFRA instead of exemptions.

HHS's rule would reimpose and expand the same gender identity mandate CEA challenges here. The rule says, "[p]roposed paragraph [92.101](a)(2) clarifies that discrimination on the basis of sex includes discrimination on the basis of sex stereotypes; sex characteristics, including intersex traits; pregnancy or related conditions; sexual orientation; and gender identity." Proposed Rule at 47,858.[3] This is the gender identity mandate that HHS has repeatedly issued, that courts have

---

[3] The proposed rule would expand the gender identity mandate, rather than narrow it, because (at minimum) it would expand the mandate's application to even more health insurance plans. See 87 Fed. Reg. at 47,844 (definition of "Health program or activity").

5

repeatedly identified—and that courts have repeatedly enjoined. *See* ECF 39 at 4–8, 13. Defendants say their new rule would "simplify" the gender identity mandate, ECF 72 at 6–7, but that is yet another way to avoid the point. The proposed rule would reimpose the gender identity mandate, not repeal it or narrow it.

HHS also implies the proposed rule might exempt religious objectors. ECF 72-1 at 5. It would not. The proposed rule has no exemption for religious objectors. Instead, HHS would consider RFRA rights on "a case-by-case approach." *Id.*

If that sounds familiar, it is because this Court read the existing regime as imposing a case-by-case assessment of RFRA rights. "Demands for an exception are evaluated 'on a case-by-case basis' turning on the individual facts of each case. [81 Fed. Reg.] at 31,380. This essentially requires providers to prove their religiosity to be exempt by the HHS." ECF 39 at 5. This Court rejected that regime under the same RFRA claim CEA presents now: "Government harassment of religious organizations requiring them to prove they are religious or evaluating whether their religious preferences can withstand a case-by-case analysis is a sufficient injury." *Id.* at 10–11. "Religious freedom cannot be encumbered on a case-by-case basis." *Id.* at 16. "Determining on a case-by-case basis if a religious exemption should apply is certainly not the least restrictive means. The Alliance has shown a likelihood of success on the merits." *Id.* at 17.

In other words, HHS's reason for delaying this case is that it plans to codify its "harassment of religious organizations" with "a case-by-case analysis," ECF 39 at 10–11, rather its current ad hoc basis for case-by-case review. This is not a reason to avoid considering CEA's RFRA claims. This Court already found CEA has a likelihood of success against a case-by-case RFRA approach.

HHS suggests that under the proposed rule it may hold enforcement in abeyance while engaging in its case-by-case RFRA approach. But encumbering religious freedom case-by-case is unacceptable in any form. Nor does HHS say that

entities' *liability* will be held in abeyance. In other words, while a religious organization waits for HHS to decide whether to respect RFRA, it will be violating the mandate and accruing daily penalties. When it is finally denied an exemption, its penalties will be higher. This will exert "pressure" to violate its beliefs, which is itself religious injury. *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *see also Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 753 (9th Cir. 2020) (a government agency violates religious liberty where it makes a party "wait an unknown amount of time for a response that may never come, all while [their] injury remains ongoing").

HHS essentially asks for a preliminary injunction against summary judgment, arguing that it has a substantial likelihood of mooting this case months from now. This is not appropriate when the proposed rule is not a proposed repeal, but a nearly identical mandate with no religious exemptions. The current case is not moot—HHS's discussion of future mootness backhandedly concedes so. The Eighth Circuit already held that the current regime violates RFRA. CEA has standing now, and CEA is entitled to summary judgment.

### III. HHS's proposed rule will not negate CEA's RFRA claims.

HHS suggests that CEA's claims are only based on HHS's existing rules, ECF 72-1 at 1, and that CEA's claims would not run against the proposed rule if finalized. This is incorrect. The relief CEA requested would protect it from a future Section 1557 gender identity mandate. The injunction affirmed in *Religious Sisters* similarly protects those plaintiffs if this proposed rule is finalized.

RFRA runs not just against rules, but against statutes. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020) ("RFRA operates as a kind of super statute, displacing the normal operation of other federal laws . . . ."). CEA's RFRA claims have consistently run against Defendants' enforcement of the statutes Title VII and

Section 1557 by "any" regulatory or sub-regulatory mechanism. Original Complaint, ECF 1 at 47 (requesting relief against HHS "interpreting or enforcing Section 1557 . . . and any implementing regulations thereto" against CEA and its members); *accord* Amended Complaint, ECF 68 at 52 (same); *see also id.* ¶ 229 ("CEA requests this relief whether the current HHS Gender Identity Mandate arises from the 2016 Rule or the 2021 Notice of Enforcement, or both, from any still-in-effect sections of the 2020 Rule or applicable court orders, *or from any HHS regulations imposing the same mandate*.") (emphasis added); *id.* ¶¶ 188–89, 226–28 (seeking relief from Defendants' enforcement under Title IX and Section 1557).

CEA's injunction request is worded the same as the injunction affirmed by *Religious Sisters*: "enjoin[ing] and restrain[ing]" HHS and EEOC "from interpreting or enforcing Section 1557" and "Title VII" (respectively) or "any implementing regulations thereto against" CEA or its present or future members. *Religious Sisters of Mercy v. Cochran*, No. 3:16-cv-00386, 2021 WL 1574628 at *1 (D.N.D. Feb. 19, 2021). The *Religious Sisters* plaintiffs who currently possess this injunction will not have to file a new lawsuit if HHS finalizes its proposed rule. Their RFRA injunction already protects them. CEA requests the same protection for its members.

RFRA is why courts have been able to protect plaintiffs from federal agency mandates even when their bureaucratic mechanisms change at a dizzying pace, across three administrations, amid competing court orders. RFRA can do this because agencies only have the powers given to them by Congress, *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022), and RFRA is "a kind of super statute" that can override those powers, *Bostock*, 140 S. Ct. at 1754. Thus plaintiffs can get RFRA relief from existing and future enforcement of that statute.

Defendants urgently wish to delay this case, not because summary judgment will not protect CEA from the proposed rule, but because it will.

Defendants are correct that this Court's preliminary injunction protecting CEA would remain in place during any stay. ECF 72-1 at 1–2, 6. But the existence of a preliminary injunction is not a reason to delay summary judgment. This case was delayed so that the Eighth Circuit could issue *Religious Sisters*. Now that *Religious Sisters* is final, summary judgment is appropriate.

Defendants suggest the summary judgment process will take too long to be completed before HHS's proposed rule is finalized. But that is speculative and irrelevant. The Court could issue summary judgment even after a new rule issues, since CEA's claims run against present and future enforcement of the statute.

And because of *Religious Sisters*, the Court's task need not take so long. CEA raises the same religious objections, against the same mandates, which impose the same burdens, and which lack justifications for the same reasons that resulted in *Religious Sisters* affirming permanent relief on the merits. CEA has also identified non-plaintiff members, just as *Religious Sisters* said an association must do to get an injunction for its members. A ruling along those lines can result in an injunction for CEA and its members before: (1) HHS finishes drafting its rule; (2) HHS sends the draft rule to OIRA; (3) OIRA engages in 90 days of review or more; (4) HHS, OIRA, the White House, DOJ, and other agencies negotiate the rule's final language; (5) HHS publishes the final rule; and (6) the rule goes into effect two months later. CEA requested oral argument, but would waive that request if it helps the Court rule before HHS's proposed rule is finalized.

## IV. Summary judgment briefing should continue.

It does not harm Defendants to file a summary judgment opposition brief. The Court should deny Defendants' pending motions.

Nor should Defendants receive an indefinite stay of this case by alternative means through its motion to extend (ECF 73). That motion does not ask for a

specific number of extra days for a particular reason. It seeks an indefinite extension until this Court decides the stay motion. Granting that motion would award a stay by another name. It is unjustified for same reasons outlined above.

Instead, after Defendants' reply brief deadline tomorrow, Defendants should be subject to the existing deadline to respond to CEA's summary judgment motion. Or the Court could grant an extension to a specific date, such as 14 days—but not an open-ended delay. Defendants could respond by that date, or be subject to the Court granting CEA's summary judgment motion under Local Civil Rule 7.1(A)(3).

Since Defendants did not request an extension to a specific date, only an open-ended extension, the Court should deny both pending motions, ECF 72 & 73.

Respectfully submitted November 7, 2023.

                                                      */s/ Matthew S. Bowman*

**Matthew S. Bowman**
DC Bar No. 993261
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
mbowman@ADFlegal.org

**Julie Marie Blake**
VA Bar No. 97891
**Jacob Ethan Reed**
OH Bar No. 99020
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
jblake@ADFlegal.org
jreed@ADFlegal.org

*Counsel for Plaintiff Christian Employers Alliance*