## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Christian Employers Alliance, | |
| Plaintiff, | |
| vs. | Case No. 1:21-cv-195 |
| United States Equal Opportunity Commission, et al. | |
| Defendants. | |

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

[¶1]    THIS MATTER comes before the Court upon a Motion for Partial Summary Judgment filed by the Plaintiff, Christian Employers Alliance ("CEA"), on October 26, 2023. Doc. No. 69. CEA also filed a Motion for Hearing on October 26, 2023. Doc. No. 70. A Response by all the Defendants[1] was filed on November 30, 2023. Doc. No. 80. CEA filed a Reply on December 14, 2023. Doc. No. 81. For the reasons set forth below, the Court **GRANTS** CEA's Motion for Partial Summary Judgment and finds CEA's Motion for Hearing **MOOT**.

## BACKGROUND

[¶2]    This case involves two federal government mandates. The first is Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), which is enforced by HHS.[2] Section 1557 of the ACA prohibits a federally funded or administered health program or activity from denying

---

[1] The Defendants in this case include; the United States Equal Employment Opportunity Commission ("EEOC"); Charlotte A. Burrows in her official capacity as Chair of the EEOC; the United States Department of Health and Human Services ("HHS"); Xavier Becerra in his official capacity as the Secretary of HHS; and Melanie Fontes Rainer in her official capacity as Director of the Office for Civil Rights of HHS.

[2] This will be referenced as the HHS Coverage Mandate.

benefits to, or subjecting to discrimination, an individual "on [a] ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.)." 42 U.S.C. § 18116(a). Section 1557 adopts the enforcement mechanisms available under the incorporated statutes including: (1) Title VI of the Civil Rights Act of 1964, (2) Title IX of the Education Amendments of 1972, (3) the Age Discrimination Act of 1975, and (4) the Rehabilitation Act of 1973. 42 U.S.C. 18116(a). Section 1557 vests the Secretary of HHS with discretion to promulgate implementing regulations. Id. at § 18116(c) ("The Secretary [of HHS] may promulgate regulations to implement this section.").

[¶3]    The second federal government mandate is Title VII, which states "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[3] "In short, the statute bars . . . sex-based discrimination." Portz v. St. Cloud St. Univ., 16 F.4th 577, 580 (8th Cir. 2021) (internal quotation marks omitted). Due to the Supreme Court's ruling in Bostock v. Clayton County, EEOC and HHS interpret the prohibitions on sex discrimination under Title VII to also prohibit discrimination on the basis of gender identity. 590 U.S. 644 (2020). EEOC and HHS enforce these statutes subject to the Religious Freedom Restoration Act ("RFRA"), which provides the government shall not substantially burden a person's religious exercise, unless imposing such a burden is the least restrictive means of furthering a compelling government interest. Doc. No. 80, p. 7; see also 42 U.S.C. § 2000bb-4.

[¶4]    However, Title IX exempts from its restrictions "an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent

---

[3] This will be referenced as the EEOC Coverage Mandate.

with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3). Title IX "authoriz[es] federal administrative enforcement by terminating the federal funding of any noncomplying recipient, [20 U.S.C.] § 1682(1), or 'by any other means authorized by law,' § 1682(2)." Nat'l Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 467 n.5 (1999). The Supreme "Court has [also] recognized an implied private right of action." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255 (2009).

[¶5]    In addition to Title IX and Section 1557, Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an applicant or employee "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII "limit[s] . . . covered 'employer[s]' to those with 15 or more employees." Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1850 (2019) (third alteration in original) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 503-04 (2006)). An employer who violates Title VII could face an administrative enforcement action or private suit for compensatory damages, punitive damages, injunctive relief, attorney's fees, and other relief. See 42 U.S.C. § 2000e-5(g); id. at § 1981a(b). The EEOC "is empowered . . . to prevent any person from engaging in any unlawful employment practice" under Title VII. Id. at § 2000e-5(a). "[The Eighth Circuit has] . . . held that 'the Supreme Court's interpretation of Title VII properly informs [The Eighth Circuit's] examination of Title IX.'" Du Bois v. Bd. of Regents of Univ. of Minn., 987 F.3d 1199, 1203 (8th Cir. 2021) (quoting Wolfe v. Fayetteville, Ark. Sch. Dist., 648 F.3d 860, 866 (8th Cir. 2011) (applying Title VII jurisprudence to a Title IX discrimination claim)).

[¶6]    The history of administrative rules regarding Section 1557 and Title VII, and its culmination from HHS's 2016 rule to the current issue is thoroughly discussed in Religious Sisters of Mercy v. Becerra, 55 F.4th 583, 588-97 (8th Cir. 2022). The Court also established the history of the present lawsuit in its previous Order granting a Preliminary Injunction. Doc. No. 39. The

Court hereby incorporates the history stated in <u>Religious Sisters of Mercy</u> and its prior Order (Doc. No. 39) into this Order, in addition to the relevant procedural history below.

## **PROCEDURAL HISTORY**

[¶7]     In granting CEA's Motion for Preliminary Injunction, this Court found (1) CEA established associational standing, (2) the issues were ripe, and (3) CEA was entitled to a preliminary injunction. <u>Id.</u> The Defendants filed an interlocutory appeal to the Eighth Circuit Court on September 23, 2022. Doc. No. 46. However, the Defendants filed a Motion to Dismiss with the Eighth Circuit, and the Eighth Circuit granted the Motion and dismissed the appeal. Doc. No. 61.

[¶8]     On December 16, 2022, CEA filed a Motion for Scheduling Order and Motion to Convert the Order Granting Preliminary Injunction into a Partial Final Judgment. Doc. Nos. 48, 49. On December 30, 2022, the Defendants filed a Motion to Stay District Court Proceedings pending appeal. Doc. No. 50. On August 1, 2023, the Court issued an Order which denied the Motion for Scheduling Order without prejudice (Doc. No. 48), denied the Motion to Convert the Order Granting a Preliminary Injunction into a Partial Final Judgment without prejudice (Doc. No. 49), and found as moot the Motion to Stay District Court Proceedings (Doc. No. 50). <u>See</u> Doc. No. 65.

[¶9]     On October 16, 2023, CEA filed an amended complaint. Doc. No. 68. The Defendants filed an answer on October 30, 2023. Doc. No. 71. The Defendants then filed a Motion to Stay Proceedings Pending Section 1557 Rulemaking and a Motion to Expedite on October 31, 2023. Doc. Nos. 72, 73. The Court granted the Motion to Expedite (Doc. No. 74) but denied the Motion to Stay (Doc. No. 79).  This brings the Court to the current pending Motion for Partial Summary Judgment filed by CEA. Doc. No. 69.

## DISCUSSION

### I.      Jurisdiction

[¶10]   The Defendants argue this Court should deny CEA's motion because CEA failed to satisfy two requirements of associational standing. First, CEA has not shown any identified members would otherwise have standing to sue in their own right because Ms. Royce testimony cannot be used to establish the necessary foundation. Doc. No. 80. Second, the Defendants state the Court must reject associational standing because CEA's RFRA claims require the participation of individual members in the lawsuit. Id. CEA argues it has met all of the elements to prove associational standing, Ms. Royce has personal knowledge, and participation of individual members is not required in this case. Doc. Nos. 69-1, 81. The Court agrees with CEA on all its arguments and finds CEA has associational standing to sue on behalf of its members in this case.

### A.  Personal Knowledge

[¶11]   Defendants state the President of CEA, Shannon O. Royce ("Royce"), does not have personal knowledge of the matters asserted in the amended complaint. Doc. No. 80. And if she does have personal knowledge, then the Defendants assert that it is based on hearsay and is not admissible. Id. CEA claims Royce has the requisite personal knowledge necessary to testify, and her affidavits are not based on hearsay. Doc. No. 81. The Court agrees with CEA that Royce has personal knowledge to the information attested to in her affidavits and that it is not based on hearsay.

[¶12]   Rule 56(c) of the Federal Rules of Civil Procedure provides that affidavits may be considered in ruling on a motion for summary judgment. Brooks v. Tri-Sys., Inc., 425 F.3d 1109, 1111 (8th Cir. 2005). "However, affidavits 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is

competent to testify to the matters stated therein.'" Id.  (citing Fed. R. Civ. P. 56(e)). When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment. Id. Plaintiffs who fail to explain the legal significance of their factual allegations beyond mere conclusory statements cannot prevail on a summary judgment motion. See Quinn v. St. Louis Cnty., 653 F.3d 745, 752 (8th Cir. 2011) (noting in order to survive a motion for summary judgment, the plaintiff needed to explain the legal significance of their factual allegations beyond mere conclusory statements importing the appropriate terms of art) (citing Doe ex rel Thomas v. Tsai, 648 F.3d 584, 588 (8th Cir. 2011).

[¶13]   Royce has twice testified that she has personal knowledge of CEA's members and beliefs. The first instance is in CEA's amended complaint, which stated Royce "is the President of Christian Employers Alliance, and has personal knowledge of the facts about CEA and its members asserted herein." Doc. No. 68, ¶ 24. This alone would be insufficient to show Royce has personal knowledge as it is conclusory. See Quinn, 653 F.3d at 752. However, Royce also testified in her supplemental declaration supporting CEA's Preliminary Injunction Motion to the following:

> I have knowledge of the operations and circumstances of CEA's members with respect to their commitment to operating consistent with the Christian Values of CEA, and to the impact of the laws and policies challenged in this case on CEA's members.

Doc. No. 69-1 at 2-6.

[¶14]   In her position as President, Royce has active and general supervision over CEA. Doc. No. 68-1, pp. 13-14, § 6.7.1. This includes a prerequisite that the President cannot accept a new member to CEA unless the prospective member adheres to CEA's standards and religious practices. Id at pp 4-5, §§ 3.1, 3.2. Two identified members of CEA, Trinity Bible College & Graduate School located in Ellendale, North Dakota, and The Children's Center Rehabilitation Hospital located in

Bethany, Oklahoma, affirm what Royce testified to is true. <u>See</u> Doc. Nos. 81-1, 81-2. These actions are not based on statements made by someone other than Royce but based on actions she sees and is personally involved in by being the supervisor of the admittance process for CEA.

[¶15]   Based on this information, the Court can "infer personal knowledge from the content or context" of her role and finds she is competent to testify as to CEA's religious practices. <u>Brooks</u>, 425 F.3d at 1111-12. Even if the evidence would be hearsay, it would be admissible for non-hearsay purposes like showing the motive, intent, or common plan of the members to exercise their religion in accordance with CEA values to avail themselves to the benefits CEA provides. Fed. R. Evid. 803(3). For those reasons, the Court finds Royce has personal knowledge about the assertions made in her affidavits, and that those statements are admissible because they are not based on hearsay.

### B.  Associational Standing

[¶16]   Because the Court has determined Royce has sufficient knowledge to testify to the facts in her affidavits, the Court can consider her testimony in ruling on CEA's Motion. It is worth noting the Court in its previous Order already found CEA has associational standing to sue on behalf of its members in this case. <u>See</u> Doc. No. 39. However, an intervening decision issued by the Eighth Circuit in <u>Religious Sisters of Mercy v. Becerra</u> warrants further analysis on this issue. 55 F.4th at 602.

[¶17]   An association has standing to bring suit on behalf of its members when (1) the individual members would have standing to sue in their own right; (2) the organization's purpose relates to the interests being vindicated; and (3) the claims asserted do not require the participation of individual members. <u>See</u> <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 645 F.3d 978, 986 (8th Cir. 2011). It is common ground that organizations can assert the standing of their members. <u>Summers</u>

v. Earth Island Inst., 555 U.S. 488, 494 (2009). An organizational plaintiff need not establish all its members would have standing to sue individually so long as it can show that any one of them would have standing. Iowa League of Cities v. EPA, 711 F.3d 844, 869 (8th Cir. 2013) (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975)). Where an organizational plaintiff seeks only declaratory and prospective injunctive relief, the participation of individual members is not required. Heartland Acad. Cmty. Church v. Waddle, 427 F.3d 525, 533 (8th Cir. 2005). In Religious Sisters of Mercy v. Becerra, the Eighth Circuit held in part that other than the three named Plaintiffs, the Catholic Benefits Association ("CBA") had failed to identify members who suffered the requisite harm alleged. 55 F.4th at 602. Thus, the Eighth Circuit held the CBA lacked associational standing to sue on behalf of unnamed members. Id.

[¶18]   In this case, CEA has identified two of its members who are not named plaintiffs, those members being Trinity Bible College & Graduate School and The Children's Center Rehabilitation Hospital. Doc. No. 68 at 11-12. Since these members are not named plaintiffs, this case is distinguishable from Religious Sisters of Mercy v. Becerra and CEA does not suffer from the same fatal flaw CBA encountered. Since CEA has identified members who are not named plaintiffs, and because CEA seeks declaratory and injunctive relief, the Court will only analyze the remaining two elements for associational standing. See Waddle, 427 F.3d at 533 (where an organizational plaintiff seeks only declaratory and prospective injunctive relief, the participation of individual members is not required)

### 1.   Whether CEA's Members Have Standing

[¶19]   The individual members of CEA have standing to sue in their own right. To have standing, the plaintiff must be able to prove three elements, (1) the plaintiff must have suffered an injury in fact which is (a) concrete and particularized and (b) actual or imminent, (2) there must be a causal

connection between the injury and conduct complained of, and (3) it must be likely the injury will be redressed by a favorable decision. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).

[¶20]   This Court held CEA members would have standing to sue as they have an injury with a causal connection to the conduct complained of, i.e., they will be imminently injured by forcing to choose between complying with the requirements of the EEOC or HHS or choosing their sincerely held religious beliefs. Doc. No. 39, p. 9, ¶ 16. This is an imminent and concrete injury as CEA's members have sincere religious beliefs that will be violated if they must adhere to the EEOC and HHS coverage mandates. Lastly, CEA's injuries can be properly addressed by ordering a permanent injunction and declaratory relief. By issuing a permanent injunction preventing EEOC and HHS from imposing the mandates on CEA, CEA will be able to maintain its sincerely held religious beliefs. Therefore, this Court again finds that CEA members have standing to sue in their own right.

### 2.   Whether CEA's Purpose Relates to the Interests Being Vindicated

[¶21]   CEA's interests in protecting its members' rights are directly related to CEA's purpose. Part of CEA's purpose is to support and develop strategies for members so that members may provide health and employment benefits in a manner consistent with Christian values. Doc. No. 68-2, Art. II. CEA's interest in protecting its members' sincerely held religious beliefs is thus germane to CEA's purpose. As a result, this element is met. Furthermore, because all the elements for associational standing are met, this Court finds CEA may assert associational standing for its members and will consider the merits of CEA's Motion for Partial Summary Judgment.

### STANDARD OF REVIEW

[¶22]   Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and the moving party is

entitled to judgment as a matter of law. See Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see also Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under applicable substantive law, such that the evidence would allow a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[¶23]    The Court must inquire whether the evidence presents sufficient disagreement to require submission of the case to a factfinder or, alternatively, if the law demands one party must prevail. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating there are no genuine issues of material fact. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The non-moving party may not merely allege factual disputes exist or otherwise deny the movant's assertions, instead, it must specify which facts create a genuine issue for trial. Id.

## ANALYSIS

[¶24]    CEA seeks to obtain Partial Summary Judgment on its first and third claims for relief in its amended complaint. More specifically, CEA is asking this Court to (1) grant permanent declaratory and injunctive relief under Fed. R. Civ. P. 56, (2) find there is no just reason for delay and to enter a partial final judgment under Fed. R. Civ. P. 54(b), (3) stay CEA's remaining claims pending the resolution of any appeal in this case, and (4) order the parties to notify the Court when and if there is any need for further resolution of any other claims or alternate forms of relief. Doc. No. 69-1.

[¶25]    CEA's first claim for relief is for a permanent injunction prohibiting enforcement of the EEOC Coverage Mandate against CEA and its members, and a declaratory judgment declaring the EEOC Coverage Mandate violates the RFRA. CEA's third claim for relief is for a permanent

injunction prohibiting HHS's enforcement of the Gender Identity Mandate against CEA and its Healthcare Members, insurers, and third-party administrators with respect to the operation of CEA members' plans. In addition, CEA under claim three seeks a declaratory judgment declaring the HHS Gender Identity Mandate violates the RFRA. CEA claims, because there is not a genuine issue of material fact regarding the elements for permanent injunctive and declaratory relief, it is appropriate for this Court to enter summary judgment regarding its claims for relief.

[¶26]   The Defendants argue the Court should deny CEA's motion for four reasons. First, CEA has not submitted any evidence admissible on summary judgment to support the assertions made in its motion. Second, CEA only states legal effects of the mandates and legal conclusions are not the proper subject of summary judgment. Third, CEA has failed to satisfy it has associational standing to assert claims on behalf of its members. Fourth, the motion should be denied because CEA has not shown its members religious exercise has been substantially burdened. The Court will discuss each of these claims in turn.[4]

## II.   CEA's Facts are not Legal Conclusions

[¶27]   The Defendants contend CEA only alleges legal conclusions in (1) its recitation of facts regarding Title VII and Section 1557, (2) the EEOC and HHS guidance documents and regulations, and (3) the EEOC and HHS enforcement and other actions. CEA claims its arguments are not legal conclusions and are sufficient to be granted partial summary judgment. CEA also notes the Defendants arguments have been rejected by other courts already. The Court agrees with CEA. While the Defendants point out what they believe to be inconsistencies in CEA's argument and

---

[4] The Court has already determined Royce's testimony is admissible to support CEA's Partial Summary Judgment Motion and that CEA has associational standing to sue on behalf of its members. Therefore, those arguments will not be discussed and the remaining claims will be analyzed below.

restatement of the facts, what the Defendants fail to do is raise a genuine issue of material fact that shows CEA is not entitled to judgment as a matter of law. The crux of the Defendants argument is these mandates do not cause injury and that there is no threat of enforcement on part of EEOC and HHS. As explained below, the Supreme Court and Eighth Circuit have rejected these arguments.

### III.    Permanent Injunction

[¶28]   CEA avers it meets the requirements for a permanent injunction on summary judgment. Doc. Nos. 69-1, 81. The Defendants argue CEA cannot and has not met its burden of proving it is entitled to summary judgment. Doc. No. 80. The Court agrees with CEA that it is entitled to a permanent injunction regarding its first and third claims for relief.

[¶29]   The standard for issuing a preliminary or permanent injunction is essentially the same, but with one key difference. Oglala Sioux Tribe v. C & W Enterprises, Inc., 542 F.3d 224, 229 (8th Cir. 2008); see also Miller v. Thurston, 967 F.3d 727, 735-36 (8th Cir. 2020) ("A permanent injunction requires the moving party to show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction."). "If actual success is found, courts must then consider three factors to determine whether a permanent injunction is warranted: '(1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest.'" Miller, 967 F.3d at 735-36. While no one factor is dispositive, success on the merits is most important. Brakebill v. Jaeger, 905 F.3d 553, 557 (8th Cir. 2018); see also Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013) (noting probability of success on the merits "is the most significant" permanent injunction factor). The balance of harms and public interest factors merge when the government is the opposing party. Nken v. Holder, 556 U.S. 418, 435 (2009). The burden to demonstrate the necessity of injunctive relief rests with the movant. General Motors

12

Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).[5] When actual success on the merits of RFRA claims are established, "the other requirements for obtaining an injunction are generally deemed to have been satisfied." Minn. Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (cleaned up).

### A.  Success on the Merits

[¶30]   CEA will succeed on the merits. As noted in its Order Granting Preliminary Injunction, this Court determined that if CEA had to comply with these mandates, its members would have to violate their sincerely held religious beliefs which is an impermissible exercise under the First Amendment and RFRA. See Doc. No. 39, pp. 15, ¶¶ 29-17, 31.  While the Court discussed this in its previous Order, it bears repeating that 42 U.S.C. § 2000bb-4 states:

> To state a claim under RFRA, a religious objector must show that the government substantially burdens a sincere religious exercise or belief. See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, (2006). The burden then shifts to the government to show that it has a "compelling interest" in applying "the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." Id. at 429–30 (quoting 42 U.S.C. § 2000bb–1(b)). To satisfy the compelling-interest requirement, the government must do more than identify "broadly formulated interests justifying the general applicability of government mandates." Id. at 431. The government also bears the burden of showing that "application of the burden to the person ... is the least restrictive means of furthering" its compelling interest. Id. at 424.

Doc. No. 39, ¶ 29 (citing Sharpe Holdings, Inc. v. U.S. Dep't of Health & Hum. Servs., 801 F.3d 927, 937 (8th Cir. 2015), cert. granted, judgment vacated sub nom on other grounds). A way to prove the government substantially burdens the exercise of religion is when the government:

> [C]onditions receipt of an important benefit upon conduct proscribed by a religious faith or denies such a benefit because of conduct mandated by religious belief,

---

[5] Because the only meaningful difference between a preliminary and permanent injunction is whether the moving party can show actual success on the merits, the Court hereby incorporates its analysis in its previous Order Granting Preliminary Injunction here. See Doc. No. 39. As a result, only a brief analysis of each factor will be discussed.

thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs. In other words, governmental action substantially burdens the exercise of religion when it coerces private individuals into violating their religious beliefs or penalizes them for those beliefs by denying them the "rights, benefits, and privileges enjoyed by other citizens."

. . .

When the government imposes a direct monetary penalty to coerce conduct that violates religious belief, there has never been a question that the government imposes a substantial burden on the exercise of religion.

Id. at 937-38 (cleaned up); see also Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 720-726 (2014) (finding substantial burden analysis encompasses two questions, whether non-compliance would have adverse practical consequences and whether compliance by the objecting party would violate its religious beliefs as it sincerely understands them).

### 1.   Substantial Burden

[¶31]   The Defendants argue CEA has not shown its members religious exercise has been substantially burdened. The Court disagrees and finds CEA has met its burden. The Defendants first claim CEA does not provide any evidence that its members are currently violating their religious convictions by offering these services mandated by EEOC and HHS. Doc. No. 80. Further, the Defendants argue CEA does not provide any evidence EEOC or HHS has taken any action against CEA members to impose these mandates. Id. However, the Supreme Court and Eighth Circuit have rejected similar arguments advanced in other cases,[6] so this Court similarly rejects these arguments.

---

[6] The Defendants in the Eighth Circuit case of Religious Sisters of Mercy v. Becerra put forth a vague argument and promised it would not enforce challenged policies contrary to the First Amendment, similar to HHS's promise to comply with RFRA and all other legal requirements. 55 F.4th at 604. The Eighth Circuit rejected this and noted a vague promise to comply with the policies does not negate the injury the policies cause. Id. The Eighth Circuit also held that just because HHS had not evaluated whether to bring a claim against an entity who violated the mandates, it does not mean that HHS would not bring a claim in the future because the government's interest

[¶32]   Here, CEA's sincerely held religious belief is that male and female are immutable realities defined by biological sex and that gender reassignment is contrary to Christian Values. Doc. Nos. 68 ¶¶ 32-34; 68-1, Art. 1, §§ 1.1.8, 1.3.5. As a result, performing or providing health care coverage for gender transition services under the EEOC and HHS coverage mandates impinges upon CEA's beliefs. CEA must either comply with the EEOC and HHS mandates by violating their sincerely held religious beliefs or else face harsh consequences like paying fines and facing civil liability. Under Title IX, administrative agencies may revoke federal funding for an offending health program or activity or use "any other means authorized by law," including civil enforcement proceedings, debarment from doing business with the federal government, lawsuits under the False Claims Act, and even criminal penalties. Doc. No. 39, ¶ 30 (citing 20 U.S.C. § 1682). These fines and exposure to civil liability are obvious practical consequences. As a result, CEA's religious beliefs are substantially burdened by the monetary penalties it faces for refusing to violate its beliefs. See Sharpe Holdings, Inc., 801 F.3d at 938. Therefore, CEA has met its initial burden of showing the government substantially burdens a sincere religious exercise or belief.

### 2.   Compelling Government Interest and Least Restrictive Means

[¶33]   Now the burden shifts to the Defendants to show it has a compelling government interest in applying the challenged law to CEA, which must be achieved by the least restrictive means. 42 U.S.C. § 2000bb-4. The Defendants contend they have a compelling interest in protecting the right of transgender patients to access crucial healthcare and in protecting workers from sex discrimination. The Defendants next claim that if application of the mandates would substantially

---

may subtly evolve over time. Id. at 603. The Supreme Court has ruled enforcement is not a requirement to find there is a substantial burden, only that the risk of a sincere belief being substantially burdened exists. See Hobby Lobby Stores, Inc., 573 U.S. at 719 (concluding the risk of financial penalties is a substantial burden).

burden a religious exercise, EEOC or HHS would consider the specific factual circumstances to assess whether applying those statutes to that person or entity was the least restrictive means of further the government's compelling interest. This Court has already rejected these arguments in its previous Order (Doc. No. 39), and the Court rejects the Defendants arguments here again. The Defendants have failed to meet their burden.

[¶34]   While protecting the right of transgender patients to access crucial healthcare and protecting workers from sex discrimination is certainly a compelling interest, the Defendants here have done nothing more than identify a broadly formulated interest in an attempt to justify the general applicability of the government mandates. The Eighth Circuit has determined this to be impermissible. See Sharpe Holdings, Inc., 801 F.3d at 937. This Court further concluded that religious freedom cannot be encumbered on a case-by-case basis. See Doc. No. 39. As stated in its previous Order, the government could provide subsidies, reimbursements, tax credits, or deductions instead of employing a cumbersome case by case review. Id. The burden is on the government to prove with evidence that its policies are the only feasible means to achieve its compelling interest. Sharpe Holdings, Inc., 801 F.3d at 943. Even if the Court were to accept the Defendants' purpose for the mandates as a compelling interest, the Defendants failed to provide any evidence showing this policy was the only feasible means to achieve its compelling interest. See Doc. No. 80. Determining on a case-by-case basis if a religious exemption should apply is certainly not the least restrictive means, especially in the absence of evidence supporting this position. As a result, this Court finds the Defendants have not met their burden. Thus, CEA has succeeded in showing it is likely to succeed on the merits.

### B.  Remaining Permanent Injunction Factors

[¶35]   Even though a finding of actual success on the merits of a RFRA claim generally means the other requirements for obtaining an injunction have been satisfied (see Swanson, 692 F.3d at 870), the Court will briefly discuss each of the remaining elements for a permanent injunction. The Eighth Court and a previous District of North Dakota order easily dispense with the remaining factors. The Eighth Circuit in Religious Sisters of Mercy v. Becerra held "the loss of freedoms guaranteed by RFRA constitutes per se irreparable harm." 55 F.4th at 608 (citing Franciscan Alliance, Inc. v. Becerra, 47 F.4th 368, 380 (5th Cir. 2022)). The Eighth Circuit also found other Circuits have come to similar findings. See Religious Sisters of Mercy v. Becerra, 55 F.4th at 608-09 (collecting cases from the Second, Fifth, and Tenth Circuits reaching same outcome). Because CEA and its members are losing freedoms guaranteed by RFRA, they have per se irreparable harm. Therefore, this element is met.

[¶36]   As for the balance and public interest factors:

> The balance of harms tilts decisively in [the Plaintiff's] favor too. Absent an injunction, [the Plaintiff] will either be forced to violate their sincerely held religious beliefs by performing and covering gender-transition procedures or to incur severe monetary penalties for refusing to comply. Sharpe Holdings, 801 F.3d at 945. An injunction will also advance the public interest because the protection of constitutional rights is always in the public interest. Carson v. Simon, 978 F.3d 1051, 1061 (8th Cir. 2020) (citation omitted). Finally, injunctive relief should extend to the [Plaintiff's] present and future members to avoid continuous litigation and a waste of judicial resources. [Christian Emps. All. v. Azar, No. 3:16-cv-309, 2019 WL 2130142, at *5 (D.N.D. May 15, 2019)].

Religious Sisters of Mercy v. Azar, 513 F. Supp. 3d 1113, 1153 (D.N.D. 2021).[7] This Court adopts and incorporates that reasoning here and concludes that the balance and public interest factors

---

[7] Judgment entered sub nom. Religious Sisters of Mercy v. Cochran, No. 3:16-CV-00386, 2021 WL 1574628 (D.N.D. Feb. 19, 2021), aff'd in part, remanded in part sub nom. Religious Sisters of Mercy v. Becerra, 55 F.4th 583 (8th Cir. 2022).

firmly weigh in favor of CEA. The Court further notes the injunctive relief ordered here shall extend to present and future members for the reasons advanced in <u>Christian Employers Alliance</u>. 2019 WL 2130142 at *5 (finding that limiting the permanent injunction to relief for only current members and not future members would result in continuous litigation and be a waste of judicial resources as well as the time and resources of the litigants).[8]

## **CONCLUSION**

[¶37]   The Court has reviewed the record, the parties' filings, and the relevant legal authority. After reviewing the above mentioned materials, this Court has determined there is no just reason for delay in entering partial final judgment for CEA on its first and third claims for relief as there are no genuine issues of material fact preventing entry of judgment. As a result, the Court determines the factors weigh in favor of granting the Plaintiff's Motion for Partial Summary Judgment. The Plaintiff's Motion for Partial Summary Judgment (Doc. No. 69) regarding its first and third claims in its amended complaint (Doc. No. 68) for violations of the RFRA are hereby **GRANTED**.

[¶38]   The Court further **DECLARES** HHS's interpretation of Section 1557 that requires CEA or its present or future members, or anyone acting in concert or participation with them, and their respective health plans and any insurers or third-party administrators ("TPAs") in connection with such health plans, to perform or provide insurance coverage for gender-transition procedures[9] violates their sincerely held religious beliefs without satisfying strict scrutiny under RFRA.

---

[8] The Court notes the Defendants reservation about applying the reasoning of <u>Christian Employers Alliance</u> to the facts of this case for "Article III" concerns. Doc. No. 80, pp. 31-32, n. 11. What the Defendants fail to do however is support their argument with caselaw. Because this argument is unsupported, the Court rejects the Defendants argument and will consider the facts and reasoning applied in <u>Christian Employers Alliance</u>, 2019 WL 2130142.

[9]   The term "gender-transition procedures" includes surgery, counseling, provision of pharmaceuticals, or other treatments sought in furtherance of a gender transition.

[¶39]   Accordingly, the Court **PERMANENTLY ENJOINS AND RESTRAINS** HHS, Secretary Becerra, their divisions, bureaus, agents, officers, commissioners, employees, employees, and anyone acting in concert or participation with them, including their successors in office, from interpreting or enforcing Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), or any implementing regulations thereto against CEA or its present or future members, or anyone acting in concert or participation with them, and their respective health plans and any insurers or TPAs in connection with such health plans, in a manner that would require them to perform or provide insurance coverage for gender-transition procedures, including by denying federal financial assistance because of their failure to perform or provide insurance coverage for such procedures or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.

[¶40]   The Court further **DECLARES** that the EEOC's interpretation of Title VII that requires CEA or its present or future members, or anyone acting in concert or participation with them, and their respective health plans and any insurers or TPA's in connection with such health plans, to provide insurance coverage for gender-transition procedures that violates their sincerely held religious beliefs without satisfying strict scrutiny under the RFRA.

[¶41]   Accordingly, the Court **PERMANENTLY ENJOINS AND RESTRAINS** the EEOC, Chair Burrows, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, from interpreting or enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., or any implementing regulations thereto against CEA or its present or future members, or anyone acting in concert or participation with them, and their respective health plans and any insurers or TPAs in connection with such health plans, in a manner that would require them to provide insurance

coverage for gender-transition procedures in those plans, including by denying federal financial assistance because of their failure to provide insurance coverage for such procedures or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.

[¶42]   Nothing in this order shall prevent the EEOC from:

1. taking any action in connection with the acceptance of a charge for filing regardless of the source, including receiving an online inquiry via the agency's Public Portal or requesting or receiving a questionnaire or other correspondence from the charging party, when the charge concerns an allegation against a CEA member concerning the exclusion of gender-transition procedures from its insurance coverage;

2. accepting a charge alleging that a CEA member does not provide insurance coverage for gender-transition procedures, and from entering the charge into the EEOC's computer systems;

3. serving a notice of the charge upon a CEA member within ten days as required by 42 U.S.C. § 2000e-5(b); or

4. issuing a right-to-sue notice to a charging party who has filed a charge against a CEA member concerning the exclusion of gender-transition procedures from its insurance plan in accordance with the requirements and procedures set forth in 42 U.S.C. § 2000e-5(b) & (f)(1) and 29 C.F.R. § 1601.28(a)(1) & (2).

[¶43]   It is ordered that CEA's remaining claims (the Second, Fourth, Fifth and Sixth Claims for Relief, Doc. No. 68, pp. 36, 40, 42, 45) are stayed pending the resolution of any appeal in this case and order the parties to notify the Court when and if there is any need for further resolution of any other claims or alternate forms of relief; and

[¶44]   The Court retains jurisdiction of this matter as necessary for enforcing this Court's orders.

[¶45]   Additionally, because the Court has ruled on CEA's Motion for Partial Summary Judgment, CEA's Motion for Hearing (Doc. No. 70) is hereby **MOOT**.

[¶46]   **IT IS SO ORDERED.**

DATED March 4, 2024.

_____

Daniel M. Traynor, District Judge
United States District Court